**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

**DOCKET NOS. 15-1040 & 15-1041**

---

TESCO CORPORATION,
Plaintiff-Appellant,

v.

NATIONAL OILWELL VARCO, L.P.,
OFFSHORE ENERGY SERVICES, INC., &
FRANK'S INTERNATIONAL, L.L.C.,
Defendants-Appellees,

v.

GLENN A. BALLARD, JR. &
JOHN F. LUMAN, III,
Interested Parties-Appellants

Appeal from the United States Court for the Southern District of Texas
In Case No. 08-cv-2531, Hon. Keith P. Ellison

---

# ATTORNEY-APPELLANTS GLENN A. BALLARD, JR. AND JOHN F. LUMAN, III'S REPLY BRIEF

---

April 20, 2015

Grant J. Harvey, Lead Attorney
Jeffrey C. Kubin
Ayesha Najam
Gibbs & Bruns, LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel: (713)650-8805
Fax: (713)750-0903

gharvey@gibbsbruns.com
jkubin@gibbsbruns.com
anajam@gibbsbruns.com

**Counsel for Appellants**
**Glenn A. Ballard, Jr. and**
**John F. Luman, III**

# CERTIFICATE OF INTEREST

Counsel for Appellants Glenn A. Ballard, Jr. and John F. Luman, III certifies the following:

1. The full name of every party or amicus represented by my firm is as follows:

Glenn A. Ballard, Jr.; John F. Luman, III

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by my firm is:

[n/a]

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by my firm are:

[n/a]

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by my firm in the trial court and/or are expected to appear in this court are:

Grant J. Harvey (Lead Attorney)

Jeffrey C. Kubin

Ayesha Najam

Brice Wilkinson

**GIBBS & BRUNS, LLP**

William F. Lee

Richard O'Neill

Katie Saxton

Michaela V. Sewall

**Wilmer Cutler Pickering Hale and Dorr LLP**

# TABLE OF CONTENTS

I. Introduction....1

II. Tesco's Dismissal of its Appeal and the Accompanying Settlement Does Not Affect Attorney-Appellants' Standing....5

III. Appellees Fail to Cite the Proper Standard of Review....8

IV. The District Court's Order Hinges Upon a Single Finding of Bad Faith Misconduct, and So Does this Appeal....11

V. Appellees Fail to Demonstrate That the District Court's Process Was Adequate, Mostly Because There Was No Process....13

VI. Appellees' Motion to Strike Should Be Denied....19

VII. Karr's Memory Was Not Clear and Convincing....19

VIII. Appellees Make Numerous Other Errors of Law and Fact....22

A. Attorney-Appellants Absolutely Have an Explanation for the Supposed "Misconduct"....22

B. Appellees Make Numerous Accusations of Dishonesty That Are Unfounded and Are Premised on the Incorrect Assumption That the Brochure Was Automatically Invalidating....26

IX. Conclusion....29

# TABLE OF AUTHORITIES

**Cases**

*1488, Inc. v. Philsec Inv. Corp.*,
939 F.2d 1281 (5th Cir. 1991) ........ 15

*Amsted Industries, Inc. v. Buckeye Steel Casings Co.*,
23 F.3d 374 (Fed. Cir. 1994) ........ 8, 10

*Butler v. Biocore Med. Technologies, Inc.*,
348 F.3d 1163 (10th Cir. 2003) ........ 6

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (2014) ........ 11

*City of W. Covina v. Perkins*,
525 U.S. 234 (1999). ........ 14

*ClearValue, Inc. v. Pearl River Polymers, Inc.*,
560 F.3d 1291 (Fed. Cir. 2009) ........ 9

*Crowe v. Smith*,
151 F.3d 217 (5th Cir. 1998) ........ 12

*Edwards v. Gen. Motors Corp.*,
153 F.3d 242 (5th Cir. 1998) ........ 26

*Fleming & Associates v. Newby & Tittle*,
529 F.3d 631 (5th Cir. 2008) ........ 7

*Grider v. Keystone Health Plan Cent., Inc.*,
580 F.3d 119 (3d Cir. 2009) ........ 7

*Hill v. Norfolk & W. Ry. Co.*,
814 F.2d 1192 (7th Cir. 1987) ........ 18

*Ibarra v. Baker*,
338 Fed. Appx. 457 (5th Cir. 2009). ........ 7

*In re Moore*,
739 F.3d 724 (5th Cir. 2014) ........ 11, 13

*In re Tutu Wells Contamination Litig.*,
120 F.3d 368 (3d Cir. 1997) ........................................................................15

*Johnson v. Bd. of County Com'rs*,
85 F.3d 489 (10th Cir. 1996) ........................................................................7

*Kirkland v. Nat'l Mortg. Network, Inc.*,
884 F.2d 1367 (11th Cir. 1989) ........................................................................8

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
175 F.3d 1356 (Fed. Cir. 1999) ........................................................................9

*Miller v. LeSea Broad., Inc.*,
87 F.3d 224 (7th Cir. 1996) ........................................................................17

*Mitsubishi Chem. Corp. v. Barr Labs., Inc.*,
435 Fed. Appx. 927 (Fed. Cir. 2011) ........................................................................27

*Monsanto Co. v. E.I. Du Pont de Nemours & Co.*,
748 F.3d 1189 (Fed. Cir. 2014) ........................................................................ 9, 10, 20

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
449 Fed. Appx. 923 (Fed. Cir. 2011) ........................................................................ 9, 10

*Pfaff v. Wells Elecs., Inc.*,
525 U.S. 55 (1998) ........................................................................27

*PPG Indus., Inc. v. Guardian Indus. Corp.*,
75 F.3d 1558 (Fed. Cir. 1996) ........................................................................27

*Precision Specialty Metals, Inc. v. United States*,
315 F.3d 1346 (Fed. Cir. 2003). ........................................................................5, 6

*Pullman-Standard v. Swint*,
456 U.S. 273 (1982) ........................................................................13

*Retamal v. U.S. Customs & Border Prot.*,
439 F.3d 1372 (Fed. Cir. 2006) ........................................................................6

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980) ........................................................................18

*Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc.*,
549 F.3d 1381 (Fed. Cir. 2008) ........................................................ 8, 10

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
726 F.3d 1306 (Fed. Cir. 2013) ..........................................................10

**Statutes**

35 U.S.C. § 103(a) ..........................................................................27

35 U.S.C. § 285 ...............................................................................10

**Other Authorities**

ABA Model Rule 3.3 .................................................................. 25, 26

Texas Disciplinary Rule 1.05 .............................................................26

Texas Disciplinary Rule 3.03 ....................................................... 24, 25

## I. Introduction

Appellees' brief is a parade of legal errors. They cite the wrong standard of review and the wrong standard of proof. They mostly ignore the district court's chosen grounds for its order, arguing instead that the order can be affirmed based on any "evidence" in the record (and Appellees' spin thereon), despite binding law to the contrary. They propound a list of supposedly adequate (for due process purposes) notices and hearings, despite the fact that most of those notices and hearings occurred years before the actual basis for the district court's sanctions order arose. They characterize **Tesco's** efforts to seek summary judgment as a waiver of its right to a hearing on the district court's subsequent *sua sponte* sanctions. And they assert, without basis, that this Court should ignore the fact that the district court issued its Sanctions Order without a trial or hearing, without issuing even a show cause order, and without reviewing repeatedly offered contemporaneous evidence of what actually happened.

As a result, Appellees' brief is almost 14,000 words of vicious noise. They devote most of their energy to irrelevant, ad hominem attacks on Attorney-Appellants' character and purported conduct outside the Order in hopes of diverting this Court's focus away from the relevant, fatal errors that compel reversal. The Sanctions Order made the subject of this appeal contains only a single finding of misconduct: namely, that the November 1, 2010 statements

regarding Karr and Orcherton's expected testimony were false and made in bad faith. The law is clear that this Court must review and evaluate the Sanctions Order based solely upon the grounds cited by the district court. The law is also clear that there must be clear and convincing evidence to support the district court's finding of bad faith, and this Court evaluates *de novo* whether that standard has been met. Appellees ignore that legal framework entirely. Unlike some rulings, this Court cannot affirm on any ground supported by the record. But Appellees trawl the record anyway, seeking to string together a fantastic and improbable tale of a multi-year conspiracy in an attempt to bolster the district court's actual, and far more limited, finding of misconduct. Their account is both fictional and, more importantly, legally irrelevant to the issues before this Court.

As explained in Attorney-Appellants' principal brief, the district court never gave Attorney-Appellants a fair opportunity to address its perception that Karr's deposition testimony proved their willful untruthfulness. Attorney-Appellants (and Tesco) did not perceive Karr's deposition to have proved anything of the sort, and they believed the various disputes regarding the Brochure to have been largely mooted by the district court's obviousness ruling, which expressly disclaimed any reliance on the Brochure. Tesco moved for summary judgment accordingly. Appellees first raised the issue of Karr and Orcherton's depositions in their response to that summary judgment motion, and in reply, Tesco and Attorney-

Appellants offered to provide the district court with their privileged, in-trial communications and notes to resolve any doubts the court might have. Those offers were never accepted or even acknowledged.

Over the course of two hearings on Tesco's summary judgment motion, the district court never asked a single question about Karr's deposition, Orcherton's deposition, or the Attorney-Appellants' November 1, 2010 statements. The district court cancelled the trial setting and never asked for any further input or response from the Attorneys-Appellants or their client. Until the moment the Sanctions Order issued, Attorney-Appellants and their client expected that, at worst, the district court would deny Tesco summary judgment and then proceed to hold a full-blown fact-finding proceeding on Appellees' counterclaims. Attorney-Appellants submit that due process required the district court to at least issue a show cause order on the issue and to accept their repeated offers to submit their communications with Karr and Orcherton *in camera* before issuing its Sanctions Order.

Appellees' listing of eight supposed opportunities for Attorney-Appellants to "come clean" is not only inaccurate, but also is unhelpful to the due process inquiry. Most of the opportunities in question occurred before Karr was even deposed—making it temporally impossible for Attorney-Appellants to address his testimony. The law requires that attorneys receive notice of the specific conduct

and potential basis for sanctions at issue and a meaningful opportunity to be heard on that subject before sanctions may be imposed. Appellees ignore that requirement, and their due process argument falls apart as a result.

Additionally, the district court's Order and finding of bad faith misconduct are not supported by the requisite showing of clear-and-convincing evidence. Appellees assert without support that this standard does not apply; binding Fifth Circuit precedent holds that it does. The district court failed to recognize or apply this evidentiary standard in its Order. The district court also based its finding of bad faith on Karr's deposition testimony alone, given years after the fact, despite his own repeated protestations that he could not remember details of his conversations with Attorney-Appellants. Appellees attack a complete strawman on this issue, portraying Attorney-Appellants as accusing Karr of perjury. Attorney-Appellants make no such accusation; instead, their point is simply that Karr's testimony is not clear and convincing evidence of bad faith. The district court's Order and finding of bad faith against Attorney-Appellants should be vacated and reversed on these grounds as well.

Appellees also argue, without citation to any new authority, that Attorney-Appellants have no standing to address that Order on appeal. It is hard to imagine any order that could be more damaging to the lawyers involved than this one. All but one of the federal circuits, including this one, have permitted appeals based

upon the injury that such an order, and its findings, can cause to a lawyer's professional reputation. Attorney-Appellants fall squarely within that injured category. Appellees also suggest that Attorney-Appellants are wasting the Court's time because the underlying case has settled and been dismissed, but every one of those circuits to have considered the issue to date has held that the residual reputational effects from a sanctions order or findings of misconduct are not dissipated by a settlement or dismissal. Attorneys-Appellants' injuries continue regardless of the settlement, and so should this appeal.

## II. Tesco's Dismissal of its Appeal and the Accompanying Settlement Does Not Affect Attorney-Appellants' Standing

The grievous harm to Attorney-Appellants' reputations is self-evident on the face of the Sanctions Order. Appellees offer no new arguments on this issue in their brief, instead essentially resting on their previously filed motion. Appellees' arguments are not supported by this Court's precedent. As with other circuits, this Court has recognized that a "judicial reprimand is likely to have a serious impact upon a lawyer's professional reputation and career" and may be worse "than the imposition of a monetary sanction." *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1353-54 (Fed. Cir. 2003). Thus, despite Appellees' arguments to the contrary, a reprimand need not be monetary or in any particular form. That would exalt form over substance. This Court goes on to say "judicial statements . . . that are not accompanied by a sanction or findings, are not directly

appealable." *Id.* at 1352. The "or" is disjunctive, indicating that criticism is elevated to an appealable reputational injury by either a "sanction" or "findings." Here, Attorney-Appellants have both. The only arguable distinction between this case and *Precision Metals* is that the court here selected a more severe sanction for the attorneys' misconduct (dismissal with prejudice) over a milder one (mere reprimand). And as Attorney-Appellants pointed out, even a mere admonishment is enough. *See Retamal v. U.S. Customs & Border Prot.*, 439 F.3d 1372, 1375 (Fed. Cir. 2006) (allowing an attorney to appeal an order that merely "admonished [him] to adhere to the court's rules"). Surely findings of willful, bad faith misconduct in a sanctions order are enough too. This Court should "join the majority of circuits in holding that an order finding ethical violations is appealable, post-judgment, under § 1291." *Butler v. Biocore Med. Technologies, Inc.*, 348 F.3d 1163, 1168 (10th Cir. 2003)

Tesco's dismissal of its appeal and the settlement of the underlying case changes nothing. Attorney-Appellants' standing flows from the Sanctions Order itself—unless and until that Order and its finding of misconduct are vacated or reversed, their reputational injuries endure. The fact that Attorney-Appellants' former client has settled its underlying claims in the lawsuit does not diminish their injuries, and thus it does not diminish their standing either. The same is true of Appellees' release of their counterclaims for attorneys' fees. It is true that

Attorney-Appellants have now signed the settlement agreement, but the release therein explicitly states that it does not preclude any rights Attorney-Appellants may have to pursue this appeal.[1]

This Circuit has not yet addressed this specific scenario—namely the effect of a settlement on an attorney's individual reputational standing and ability to appeal. But other circuits have. In *Fleming & Associates*, the Fifth Circuit held that the settlement of a case does not render a sanctions order unappealable: "[a]ny nonmonetary portion of the sanctions not rendered moot by settlement is appealable for its residual reputational effects on the attorney." *Fleming & Associates v. Newby & Tittle*, 529 F.3d 631, 640 (5th Cir. 2008). In another post-settlement case, the Fifth Circuit considered the merits of two attorneys' appeal even after the monetary aspects of their sanctions had been resolved. *See Ibarra v. Baker*, 338 Fed. Appx. 457, 460 (5th Cir. 2009). Most circuits that recognize the validity of reputational standing have also recognized that such standing persists independently of whether the underlying case settles or is otherwise resolved. *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 133 (3d Cir. 2009) ("[T]he settlements did not moot the appeals because the Appellants experienced (and continue to experience) reputational harm."); *Johnson v. Bd. of County Com'rs*, 85 F.3d 489, 492 (10th Cir. 1996) ("[S]ettlement of an underlying case

[1] The same is true of Appellees' right to oppose this appeal.

does not preclude appellate review of an order disqualifying an attorney from further representation insofar as that order rests on grounds that could harm his or her professional reputation . . . ."); *Kirkland v. Nat'l Mortg. Network, Inc.*, 884 F.2d 1367, 1370 (11th Cir. 1989) (holding an attorney's appeal of a order revoking his *pro hac vice* status was a live controversy post-dismissal because "the 'brand of disqualification' on grounds of dishonesty and bad faith could well hang over his name and career for years to come"). To the best of Attorney-Appellants' knowledge, no court that has accepted the doctrine of reputational standing (like this Court) has ever held to the contrary. This Court should join that consensus.

**III. Appellees Fail to Cite the Proper Standard of Review**

In a footnote added to their corrected brief, Appellees dispute what standard of review applies to this case. ACB at 40 n.20. Appellees assert that this Court should apply only a pure "abuse of discretion" standard, relying on a single block quote from *Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc.*, 549 F.3d 1381, 1390 (Fed. Cir. 2008), which in turn relied upon a single line in *Amsted Industries, Inc. v. Buckeye Steel Casings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994). Appellees are incorrect.

In the recent *Monsanto* case, which Appellees actually cite in their brief for a different proposition, this Court held: "When reviewing the imposition of sanctions under a district court's inherent powers, we apply the law of the regional

circuit in which the district court sits." *Monsanto Co. v. E.I. Du Pont de Nemours & Co.*, 748 F.3d 1189, 1196 (Fed. Cir. 2014). Similarly, in another recent (albeit unpublished) case: "Because a district court's invocation of its inherent powers is not an issue unique to patent law, we apply the law of the regional circuit, here the Fifth Circuit." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 449 Fed. Appx. 923, 930 (Fed. Cir. 2011) (citing *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1308-09 (Fed. Cir. 2009)). Appellees contend that the *ClearValue* decision applies only to Rule 37 cases, but this Court has already concluded otherwise.

That conclusion is consistent with this Court's general approach to circuit-choice-of-law issues. The ultimate determinant for whether this Court applies its own law or a regional circuit's law is whether the issue is unique to patent law or not. *See Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (*en banc* in relevant part) ("In reviewing district court judgments in patent cases, we apply our own law with respect to patent law issues, but with respect to nonpatent issues we generally apply the law of the circuit in which the district court sits."). The decision to sanction a litigant or an attorney pursuant to the court's inherent powers is not an issue unique to patent law, so this Court looks to the appropriate regional circuit's precedent for the applicable standard of proof and standard of review. *See O2 Micro*, 449 Fed. Appx. at 930; *see also, e.g.*,

*Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1344 (Fed. Cir. 2013) (applying Seventh Circuit standards in reviewing an inherent-power sanction).

Appellees' cited cases *Takeda* and *Amsted* are not to the contrary. As an initial matter, neither case involved an appeal from a district court within the Fifth Circuit. The applicable regional circuits may have applied a simple abuse-of-discretion test at the time, or the appellants may have acceded to that standard. Moreover, *Takeda* and *Amsted* both concerned findings that a case was exceptional under 35 U.S.C. § 285. As part of those exceptional-case rulings—which is a subject unique to patent law—the district courts used their inherent authority for the sole purpose of tacking expert witness fees onto the award. Although the language in the decisions could be interpreted more broadly (as Appellees seek to do), *Takeda* and *Amsted* are best read as applying only to that narrow, patent-law specific issue (i.e., an award of expert fees as part of a § 285 ruling).

Here, the district court made no exceptional-case ruling under § 285. Nor was this simply an award of expert fees. Instead, the district court invoked its inherent sanctions power to dismiss a litigant's case with prejudice based upon a finding of bad faith and willful misconduct by counsel. That is not an issue unique to patent law. *See O2 Micro*, 449 Fed. Appx. at 930; *Monsanto*, 748 F.3d at 1196. The Fifth Circuit's standard of review and other applicable case law therefore applies.

As explained in Attorney-Appellants' principal brief, in the Fifth Circuit, "[a] decision to invoke the inherent power to sanction requires a finding of bad faith or willful abuse of the judicial process, which finding [the Court] review[s] ***de novo***." *In re Moore*, 739 F.3d 724, 729-30 (5th Cir. 2014) (emphasis added). "In sum, we uphold a lower court's decision to invoke its inherent sanctioning power ***only if clear and convincing evidence supports the court's finding of bad faith*** or willful abuse of the judicial process." *Id.* at 730 (emphasis added).[2] The district court chose, solely on its own volition, to issue its Sanctions Order pursuant to its inherent powers. Those powers are subject to high thresholds and standards due to their potency. This Court must review their invocation accordingly.

## IV. The District Court's Order Hinges Upon a Single Finding of Bad Faith Misconduct, and So Does this Appeal

In addition to citing the wrong standard of review, Appellees also cite the wrong standard of evidence and devote most of their brief to discussing their own **accusations** of misconduct, as opposed to the district court's actual **finding** of misconduct. The thesis of their brief is essentially that "the district court's ruling

[2] This approach is consistent with the Supreme Court's prior statement, "We review a court's imposition of sanctions under its inherent power for abuse of discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (2014). The Fifth Circuit's *de novo* portion of the review is for the finding of bad faith, which the Fifth Circuit views as the ancillary predicate to any invocation of the inherent power to sanction. The district court's subsequent decision of *which* sanction to impose—i.e., the actual "imposition of sanctions"—is where the abuse-of-discretion standard applies.

was the culmination of years of litigation misconduct well documented in the record," ACB at 9, and so they seek to list every example of other alleged potential misconduct they can. But even if their characterization of the record were true (and it is not), it is legally irrelevant to the issues and inquiry before this Court.

For purposes of appellate review, it does not matter what is "well documented" in the record; it only matters what is **expressly** documented in the district court's order. Again, the Fifth Circuit has set clear rules: "For this court to affirm inherent power sanctions on grounds other than those **expressly chosen** by the imposing court would constitute an encroachment upon that court's discretion unwarranted by the concerns for order and necessity inherent in their use." *Crowe v. Smith*, 151 F.3d 217, 240 (5th Cir. 1998). All that matters for this appeal are the district court's chosen grounds for its sanctions.

The Sanctions Order contains a singular finding of bad faith misconduct: counsels' representation to the district court on November 1, 2010 regarding what Karr had said over the preceding weekend regarding the Brochure. The Sanctions Order is very explicit, stating: "Mr. Karr said one thing, and counsel told the Court that he said something else. Such willfulness compels a finding of bad faith." A10. That finding of willfulness and bad faith is the core of the district court's order (as the basis for its sanctions) and this appeal (as the basis for Attorney-Appellants' reputational injuries).

In the Fifth Circuit, any such finding of bad faith "must be supported by clear and convincing proof." *In re Moore*, 739 F.3d at 730. The district court never mentions this standard in its Sanctions Order—presumably because the subject of inherent-power sanctions was never suggested by the court nor raised or briefed by the parties below. Indeed, the district court does not cite a single Fifth Circuit case anywhere in its order. As argued in Attorney-Appellants' principal brief, the district court's finding of bad faith misconduct should be vacated and remanded for reconsideration on that basis alone. *See Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982); *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993). In response, Appellees contend that clear-and-convincing-evidence "is not the proper legal standard for this case," but they provide no citation or authority that contradicts *Moore*'s clear holding. ACB at 54. Again, the district court chose to use its inherent powers, and thus it is bound by the concomitant limitations and standards that govern those powers.

## V. Appellees Fail to Demonstrate That the District Court's Process Was Adequate, Mostly Because There Was No Process

Due process requires that lawyers receive both fair notice and fair process as a prelude to sanctions. Here they received neither.

Again, the timeline is critical. In March 2013, Appellees moved for a bench trial on their counterclaims, which motion included numerous accusations of misconduct, including one that Tesco had made misrepresentations about Karr,

Orcherton, and the Brochure during trial. *See* Request (A37022-25). The district court subsequently **denied** that motion as moot for unrelated reasons without commenting on any of its accusations, authorized additional discovery on several issues, and set a bench trial on their counterclaims for early 2014. *See* Order (A37548-50). Karr's and Orcherton's depositions followed in December 2013 as part of that discovery. Shortly thereafter, Tesco moved for summary judgment on Appellees' counterclaims. *See* MSJ (A37922 *et seq.*). Appellees responded, and included in their responses the argument—made for the first time—that Karr's and Orcherton's depositions showed that Attorney-Appellants' in-trial representations were deliberately false. *See* Responses (A40258-62, A41125-26). Tesco filed two reply briefs, which included the first two offers to provide the district court with the privileged, in-trial communications for *in camera* review. *See* Replies (A41989, A42439). Tesco also contended that the deposition transcripts did not demonstrate any willful misconduct or intent to mislead. *See id.* The district court subsequently held two hearings on Tesco's motion, but never ruled on it. Instead, the district court issued its Sanctions Order and denied the motion as moot six months later.

"A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful." *City of W. Covina v. Perkins*, 525 U.S. 234, 240 (1999). In the sanctions context, an adequate notice for

due process purposes must specify the **reason** why sanctions are threatened. *See, e.g., In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 379 (3d Cir. 1997). ("[A] party cannot adequately defend himself against the imposition of sanctions unless he or she is aware of the issues that must be addressed to avoid the sanctions."). An opportunity to speak is irrelevant without adequate notice. *See id.*; *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1292 (5th Cir. 1991).

Appellees ignore these basic due process concepts, instead listing examples of "notice that the district court was considering the dismissal of their case." ACB at 42. In other words, Appellees' list is based on notice of the potential **punishment**, not notice of the potential **basis** for sanctions. That flips the proper legal inquiry on its head. Appellees contend that the district court "was not obligated to inform the Lawyers in advance what sanction it intended to impose," ACB at 49, but the court *was* obligated to inform them of the potential *reason* for those sanctions.

As a consequence of this legal inversion, Appellees' list of supposed "notices" and "opportunities" is inapposite. Most of their cited examples pre-date Karr's and Orcherton's depositions in December 2013 and therefore are patently irrelevant to this appeal. (Indeed, some even pre-date the trial itself.) None of the listed notices indicate that Attorney-Appellants were in jeopardy of a finding of bad faith based on those depositions.

Critically, Appellees cannot identify a single instance in which the district court indicated any concern regarding the truthfulness of Attorney-Appellants' statements on November 1, 2010. Nor is there a single identified instance where the district court indicated any concern regarding Karr's (or Orcherton's) deposition testimony.

The only thing that raised these issues prior to the Order was Appellees' responses to Tesco's motion for summary judgment. But there was no indication (prior to the Sanctions Order) that the district court credited those accusations, much less viewed them as a basis for inherent-power, death-penalty sanctions. In fact, if anything, the district court indicated that it *dis*credited the accusations by declining the repeated offer to review privileged materials on the subject *in camera*, by cancelling the scheduled trial following Tesco's motion for summary judgment, and by making statements during the 2014 hearings suggesting that it viewed the issues surrounding the Brochure as resolved. *See* March 2014 Trans. (A45133) ("Well, that's the ultimate question I'm reaching for. We could have a—I think this—**we've already dealt, in many respects, with the August brochure**. I know that you feel like additional sanctions are warranted, but **my focus really is the—Mr. Beierbach's testimony**, which does concern me.").

More importantly, given the procedural posture of a pending summary judgment motion filed by Tesco, Tesco (and its counsel) logically believed that if

the court disagreed with Tesco's position on summary judgment and/or agreed with Appellees' arguments in response, the result would be a trial. That was Appellees' express position as well. *See, e.g.*, Feb. 2014 Trans. (A43910) ("We look forward to the trial setting, Your Honor."). Tesco "opposed" the scheduled trial because Tesco believed it was entitled to summary judgment. A party does not forfeit its right to trial by moving for summary judgment. *See, e.g., Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 230 (7th Cir. 1996). And a party is not required to marshal all of its evidence in a summary judgment motion, much less in a summary judgment reply brief. *See id.* A court can enter an adverse judgment only if (1) the opposing party successfully cross-moves for summary judgment or (2) the court informs the movant that it intends to enter judgment for the non-movant and gives the movant "a reasonable time to respond." *See* FED. RULE CIV. P. 56(f)(1). But here Appellees filed no cross-motions, and the district court provided no such notice.

Attorney-Appellants and their client properly expected the district court to either grant or deny their summary judgment motion. In the former case, the parties would appeal; in the latter case, Tesco and its counsel would compile the full body of proof and present it to the district court (either live or via written submission on the papers) for fact-finding, guided by whatever fact issues the district court identified in its ruling. No one ever suggested the court could rule for

Appellees based on their response to Tesco's summary judgment motion, but that is essentially what happened.

Prior to August 2014, the procedural posture of the case should have dictated that, **at worst**, Tesco and its counsel would have a full opportunity to address Appellees' misconduct allegations at trial. But the district court skipped that process, provided no notice that it was contemplating sanctions on these grounds, and issued its Sanctions Order without ever hearing all of the evidence. Due process required more—particularly given the fact that, as part of its ruling, the district court decided several critically contested fact issues that occurred outside of court, ruled on Attorney-Appellants' subjective state of mind, and entered death-penalty sanctions. *See Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1201 (7th Cir. 1987) (holding due process requires "an opportunity for a hearing if a factual question concerning the propriety of sanctions is raised"); *accord Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). Importantly, Appellees admit that the district court resolved fact issues and made credibility determinations without a sanctions hearing, but contend that the district court could do so given Appellees' allegations of discovery abuse. ACB at 39. As a matter of law, the district court cannot make this determination without a hearing—much less without notice. *See Hill*, 814 F.2d at 1201.

## VI. Appellees' Motion to Strike Should Be Denied

Appellees move to "strike" references to Tesco's offers to submit documents for *in camera* review, without citing any case law in support. But those offers are plainly stated in three of Tesco's pleadings and thus are properly before this Court. *See* A41989, A42439, A44760. Appellees are correct that the documents' contents—reflecting the actual communications with these witnesses during trial—are not in the record, but that absence is precisely what Attorney-Appellants seek to remedy. Attorney-Appellants' former client, Tesco, has and continues to maintain a privilege claim with respect to these documents, which prevented Attorney-Appellants from disclosing them other than for *in camera* review. But given the documents' clearly relevant subject matter—which is also in the record—the district court's failure to accept those materials for review was a denial of due process. Appellees' motion should be denied.

## VII. Karr's Memory Was Not Clear and Convincing

The lack of process ensured that Tesco and Attorney-Appellants were deprived of the ability to marshal all their evidence refuting the allegation that misrepresentations were made and left the district court without a complete record. But even the one-sided batch of testimony from Karr and Orcherton was insufficient to meet the clear-and-convincing standard.

Appellees argue otherwise, *see* ACB at 55, citing this Court's decision in *Monsanto*, 748 F.3d 1189. That case has nothing to do with the clear-and-convincing-evidence standard, as the opinion makes no reference to that standard anywhere. Nonetheless, Attorney-Appellants agree that *Monsanto* is a useful comparison, because the case supports precisely the opposite of what Appellees suggest.

Appellees contend that "sworn testimony" is somehow much stronger evidence than written emails. ACB at 55. That is backwards. The entire holding of *Monsanto* turned on the district court's analysis of Dupont's internal, privileged emails to determine its subjective beliefs on certain issues. *See Monsanto*, 748 F.3d at 1197-99. That is precisely what the district court should have done here. The strongest evidence of a communication's contents is a copy of the *actual communication*, not a participant's recollection of the communication years later. Here, Attorney-Appellants offered their actual, in-trial communications with Karr and Orcherton to the district court and were ignored. *Monsanto*—not to mention common sense—confirms that those emails were the strongest possible evidence of what occurred in 2010, and they should have been considered accordingly.

With regard to Appellees' discussion of Karr's deposition testimony, which is the sole cited basis for the Sanctions Order, they add nothing new. They ignore Karr's hesitation regarding his own memory. They ignore the fact that virtually

none of the testimony they cite is specific as to whether it pertains to Karr's initial impression, second impression, or 2014 impression of the Brochure's contents. They also ignore one of the key exceptions to that temporal vagueness, when Karr **agreed** with Tesco's interrogatory answer regarding his initial impression of the Brochure:

> Q: I'm going to read you something that was said in this Tesco interrogatory answer. And again, this relates to the first version that was sent to you. Quote:
>
> > "Specifically Mr. Karr said initially that the subject rendering in [the Brochure], the subject rendering, depicted link arms on the grabber box, which is part of the top drive [i.e., it did not depict the Invention.]"
>
> Did you tell Mr. Luman that?
>
> **A: That's what it looked like to me. Yes.**

A39140. Karr flat out agreed during his deposition that he initially told Luman the Brochure did not depict the Invention. In fact, if the link arms are on the top drive and not down on the tool as Karr admits saying, then the Rendering is unequivocally not the Invention. So Appellees' assertion that Karr "stood firm . . . that he *never* told the Lawyers during trial that the 2002 brochure was 'unequivocally' *not* a representation of Mr. Nikiforuk's invention," ACB at 58, is inaccurate, or at least a disputed fact issue the court could not resolve based solely

on Karr's memory three years later.[3] In sum, the evidence supporting the district court's finding of willful, bad faith misconduct by Attorney-Appellants is not supported by clear and convincing evidence.

## VIII. Appellees Make Numerous Other Errors of Law and Fact

For the reasons stated above, Attorney-Appellants are clearly entitled to their requested relief. Fully addressing the other inaccuracies in Appellees' brief would require more words than are permitted here. Most of those inaccuracies are irrelevant, as they involve issues beyond the scope of the Sanctions Order or, in many cases, are accusations previously rejected by the district court. Their only discernible function in the brief is to attempt to discredit Attorney-Appellants. Nonetheless, Attorney-Appellants feel compelled to respond to several of the more pervasive errors.

### A. Attorney-Appellants Absolutely Have an Explanation for the Supposed "Misconduct"

Appellees wrongly assert that Attorney-Appellants "still have no explanation for their misconduct." At the risk of repeating the principal brief, the explanation is simple: originally, over the weekend of October 29-31, 2010, Karr and Orcherton's communications with Luman were consistent with what Ballard

---

[3] Appellees also make much of Karr saying he told Luman he had "nothing to do with" the Rendering in the Brochure. A39138. But Karr's very next answer was that he had told Luman that Orcherton might have done the Rendering. *See* A39138.

relayed to the district court regarding their expected testimony the following Monday. Karr and Orcherton subsequently changed their minds about what they saw in the Brochure. At their deposition three years later, they did not recall or were not asked with sufficient clarity what their initial impression of the Brochure had been over that first weekend. The confusion over the Brochure itself arose because a third-party contractor had inserted the Rendering into the Brochure on his own initiative, and because it was so small, no one noticed that it depicted the Invention until years later in the middle of trial. There was no bad faith, no misrepresentations, and certainly no grand conspiracy—just the best efforts of attorneys to deal with a surprising revelation in the middle of a complex trial.

Appellees also accuse Attorney-Appellants of "never once" attempting to correct the record after they learned that Karr and Orcherton had changed their minds. ACB at 6. The accusation is both false and irrelevant to this appeal. Again: the district court's sole finding of misconduct was that Attorney-Appellants knowingly made a misrepresentation on November 1, not that they unknowingly made a misstatement that was inadequately corrected after November 4. Attorney-Appellants stated in open court on multiple occasions that Karr and Orcherton had changed their minds about the Brochure, two of which are quoted in Appellees' brief on page 28. Tesco also prepared an extensive interrogatory answer on the subject, stating in writing precisely what had occurred with Karr and Orcherton

during and after the trial. *See* A40319-20. Like always, Appellees characterize Attorney-Appellants' disclosures as being intentionally inconsistent, but the substance of all three disclosures is essentially the same.

More importantly, the first of these disclosures was made several years before the district court issued its Sanctions Order, and the district court never indicated that it viewed these disclosures as troubling, much less a potential grounds for sanctions. The fact that Karr and Orcherton had retreated from their initial positions was well known. The district court's sole concern, as expressed in the Sanctions Order, was whether Attorney-Appellants' initial statements to the court on November 1, 2010 were deliberately inaccurate. Per the Order, that concern arose out of Karr's deposition. To the extent there is any concern regarding whether Karr and Orcherton's reversal was timely and appropriately disclosed, such concern should be addressed in the first instance on remand. The district court has made no findings on the issue, and thus it is not part of this appeal.

One additional comment is warranted with regard to the Texas Disciplinary Rules, which Attorney-Appellants agree apply here. The Texas rule on candor (3.03) contains a key distinction between factual statements made to a court and facts offered into evidence. Under the Texas rule, an attorney must not knowingly make a false statement of fact to a tribunal (per 3.03(a)(1)), or knowingly offer or

use false evidence (per 3.03(a)(5)). But the Texas Rule imposes an affirmative duty to correct an inadvertent falsity **only** on the latter category of false material evidence, as stated in 3.03(b). ("If a lawyer has offered material evidence . . . ."). There is no corollary duty in Texas to correct a false statement of fact, so long as it was not made knowingly. Indeed, the comments to the rule make clear that the duty-to-correct does not even extend to evidence solicited by opposing counsel—it applies only to evidence actually introduced by the lawyer himself on direct examination. *See id.* cmt. 13. The only continuing requirement is that the attorney cannot rely upon or repeat the mistakenly false statement—which is precisely what Tesco's change in strategy accomplished here. Attorney-Appellants simply turned to other patent defenses that were still valid regardless of Nikiforuk's testimony, as discussed below.[4]

The ABA Model Rule on candor is a helpful comparison here, as it highlights the duty that does not appear in the Texas rule. The ABA Rule was amended in 2002 to add an affirmative duty to correct a false statement of fact. *See* ABA Model Rule 3.3(a)(1) (stating a lawyer "shall not knowingly . . . fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"). Many states have adopted that change. Texas has not. In fact, the

[4] Appellees even recognized and commented on this change of strategy, as exemplified by their statements quoted in footnote 6 of Attorney-Appellants' principal brief.

Texas bar rejected such a change in a 2011 referendum.[5] As a result, the Texas rule on candor for oral statements of fact remains similar to Federal Rule of Civil Procedure 11, which imposes no continuing duty to correct factual statements in a written pleading.[6] *See, e.g.*, *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998). And under these circumstances where Tesco claimed a privilege, the Texas disciplinary rules provided no exception to the attorney's duty not to disclose a client's confidential information under Rule 1.05(d) of those same rules.

### B. Appellees Make Numerous Accusations of Dishonesty That Are Unfounded and Are Premised on the Incorrect Assumption That the Brochure Was Automatically Invalidating

Appellees continue to take the position that if the Invention was "in" the Brochure—i.e., if the rendering therein showed the link arms below the top drive—then Tesco's patents at issue were automatically invalid. Indeed, Appellees' entire conspiracy theory is founded upon the notion that no less than five Tesco lawyers were desperate to hide the Brochure because they knew it was *per se* fatal. *See* ACB 17-18, n.45. But the district court expressly rejected Appellees' fictional

---

[5] http://www.texasbar.com/Content/NavigationMenu/ForLawyers/GrievanceInfoandEthicsHelpline/Final-Proposed-TDRPC-Amendments.pdf, at 73. The key addition is Rule 3.03(a)(2).

[6] This is why Tesco's opposition to NOV's motion for sanctions, which Appellees cite at length on pages 26-27 of their brief, was not misconduct either. The brief in question was filed the **morning** of November 4, so the brief's representations based upon Karr and Orcherton's initial opinions remained well-founded at the time it was filed.

conspiracy theory, as reflected by its finding that Nikiforuk's testimony regarding the Brochure's significance was "to the surprise of all present." A5.

Moreover, Appellees' theory depends on the assertion that the Brochure was "absolutely invalidating prior art under 35 U.S.C. § 103(a)," and that "[o]nce the Lawyers learned about [the Brochure] . . . their case had no chance of success and the Lawyers had a duty to stop pursuing it." ACB at 14, 51. But as confirmed by the district court's rulings below and by basic patent law, Tesco had valid defenses to Appellees' invalidity claims notwithstanding the Rendering in the Brochure of the Invention.

Appellees' position is founded upon a fundamental legal misunderstanding. They ignore the entire legal framework governing the on-sale bar and prior art doctrines. To trigger the on-sale bar, the invention must be the subject of a commercial offer for sale. *See Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67-68 (1998). To constitute a prior art disclosure, the art in question must be "clear and unambiguous." *Mitsubishi Chem. Corp. v. Barr Labs., Inc.*, 435 Fed. Appx. 927, 933 (Fed. Cir. 2011). It also must "disclose every element of the challenged claim and enable one skilled in the art to make the anticipating subject matter." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1566 (Fed. Cir. 1996).

**None** of those elements is satisfied by the Brochure, regardless of the fact that a small rendering of the Invention appeared within it—or at the very least,

those elements were not satisfied beyond reasonable dispute. Thus, Tesco's closing argument that the tool did not "exist" in the Brochure was legitimate when read in context:

> [N]obody is going to call up and say, "Hey, can you give me one of those artist's renderings? That looks pretty good. Let me buy that." The tool didn't exist in the August brochure.

A23498. The point of the argument is that the rendering is just a computer image, not an existing tool being offered for sale.

Likewise, when Attorney-Appellants argued to the jury and the district court that the Brochure did not "disclose" the Invention, that argument was founded upon the concept that a depiction of an invention must be clear, unambiguous, and enabling to constitute a prior art "disclosure." For example, in closing arguments at trial, Ballard left the question of what the Brochure depicted up to the jury and argued instead that it did not matter because whatever the Brochure showed was too small to see. *See* A23498. He went on to argue that the image did not disclose all of the elements of the tool and could not have instructed a Person of Ordinary Skill in the Art, and thus was not enabling. Courts have upheld these kinds of distinctions on numerous occasions,[7] notwithstanding Appellees' calling it an "Alice in Wonderland" argument. ACB at 45. The district court thought similarly,

[7] *See, e.g.*, Principal Brief at 12 n.5.

as shown by its rejection of Appellees' post-trial summary judgment motions based on the Brochure. *See* Orders (A35808, A35832).

Appellees' accusations that Attorney-Appellants (and now their appellate counsel, see ACB at 52) were lying every time they said that the Invention was not "disclosed" by the Brochure or did not "exist" are not well taken.[8] But the ultimate issue in this appeal is not the validity or invalidity of Tesco's patents. Nor is it the propriety of Attorney-Appellants' various patent-law-related arguments. The issue is whether the district court's Sanctions Order was properly issued.

## IX. Conclusion

Appellees spend relatively little time addressing the actual merits of this appeal, instead devoting most of their time to sowing as many accusations of alleged lying and misconduct as they can. Those accusations now apparently extend to appellate counsel as well. Perhaps as a result of that misplaced focus, Appellees make numerous critical mistakes of law. The vast majority of their arguments are made under standards that do not apply and theories that are irrelevant.

For the reasons stated in their principal brief and herein, Attorney-Appellants submit that the district court's finding of willful, bad faith misconduct

[8] Appellees also claim that experts were called to lie about what was in the Brochure, but no such testimony is cited. *See* ACB at 27.

against them was made in error and should be vacated and reversed. To the extent that the Court deems it appropriate, Attorney-Appellants also request that the case be remanded to the district court for additional proceedings.

Respectfully submitted,

GIBBS & BRUNS, LLP

***/s/ Grant J. Harvey***

Grant J. Harvey
Jeffrey C. Kubin
Ayesha Najam
GIBBS & BRUNS, LLP
1100 Louisiana, Suite 5300
Houston, TX 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903
gharvey@gibbsbruns.com
jkubin@gibbsbruns.com
anajam@gibbsbruns.com

**COUNSEL FOR APPELLANTS GLENN A. BALLARD, JR. AND JOHN F. LUMAN, III**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on April 20, 2015. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF System.

***/s/ Grant J. Harvey***
Grant J. Harvey

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)

I hereby certify pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) that the foregoing reply brief contains 6,992 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), according to the word-processing system used to prepare the brief. This brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in size 14, Times New Roman font.

***/s/ Grant J. Harvey***
Grant J. Harvey